UNITED STATES of America, Plaintiff-Appellee,

v.

**Daniel Salazar HESSBROOK, a/k/a Dan Hessbrook Salazar, Defendant-Appellant.**

No. 76–3485.

United States Court of Appeals, Fifth Circuit.

July 5, 1977.

Rehearing Denied July 28, 1977.

Frank Y. Hill, Jr., (Court-appointed), Boerne, Tex., for defendant-appellant.

John E. Clark, U. S. Atty., LeRoy Morgan Jahn, Wayne F. Speck, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before COLEMAN, Circuit Judge, KUNZIG, Associate Judge,* and GEE, Circuit Judge.

PER CURIAM:

Appellant Daniel Salazar Hessbrook was charged in one count with conspiracy to transport aliens illegally into the country and in five counts with the illegal transportation of aliens. 18 U.S.C. § 371; 8 U.S.C. § 1324(a)(2). He entered a plea of not guilty, was convicted after a trial by jury, and received a sentence of twelve years imprisonment.

On appeal, the appellant claims that he was denied a fair trial because of the trial judge's instruction to a "hung jury" during its deliberations.

The record discloses that the jury retired to consider its verdict at 11:35 a. m. on August 4, 1976. At 11:36 a. m., the jury sent the judge its first note, which did no more than report the name of its foreman. A second note, requesting a copy of the written charge, was received by the judge at 1:55 p. m. Court was convened, and the note was read to counsel in appellant's presence. After review by counsel for both sides and no objection the written charge was sent to the jury at approximately 2:05 p. m.

At 2:30 p. m. the judge received a third note from the jury which read:

> We have a "hung jury". One person cannot make up (his, her) mind as to the guilt or non-guilt of the defendant. What advise [sic] can you give me on our procedure at this point?

The trial judge, without consulting counsel concerning this development, responded by writing the following reply at the bottom of the note which had been handed him:

You will deliberate further. Do not advise the Court how you stand until you have received a unanimous verdict.

Before the jury returned to the courtroom to deliver its verdict, the following colloquy took place between the judge and counsel concerning note number 3:

THE COURT: Gentlemen, the Court has received two notes from the jury. One was sent to the Court at—. Well, I will read the two notes. This is note number 3.

\* \* \* \* \* \*

All right. Note number 3 reads as follows: (read note) Signed James D. Netts, August 4, 1976, 2:30 p. m. I responded to that note: You will deliberate further. Do not advise the Court how you stand until you have reached a unanimous verdict. Signed D. W. Suttle, 2:35. That went back to them. Then note number 4 came in. Well, before I read you note number 4—any objections to the way this was handled—note number 3?

MR. SPECK [Assistant U. S. Attorney]: Entirely proper, Your Honor. We have no objection.

THE COURT: Mr. Hill?

MR. HILL [Defense Attorney]: I don't know what else the Court could have told them at this juncture.

THE COURT: Well, any objection to it?

MR. HILL: No, sir.

THE COURT: Then, the Court has received this note number 4.

Well, I better ask the defendant, do you have any objections to it?

THE DEFENDANT: (Nodded in the negative.)

Appellant argues that the effect of the judge's response to note number three was to coerce a verdict from the twelfth juror "who could not make up his (her) mind". It is insisted that by that portion of the judge's directive which said, "Do not advise the Court on how you stand until you have received a unanimous verdict", the members of the jury may have thought that they were being told that they must reach a

* Associate Judge of the United States Court of Claims, sitting by designation.

verdict, thus impinging upon the independence of the undecided juror.

It would appear that the judge must have intended to tell the jury not to tell him how it stood numerically *unless* [instead of *until*] they had reached unanimity. In any event, before the jury returned its verdict the parties were informed specifically of what had happened. They were given an opportunity to object, which they declined. They asked for no clarifying instructions to nullify any possible misunderstanding. They knew that the jury had already announced its readiness to report. Possibly the defendant and counsel felt that the 11 to 1 tilt was in their favor. They elected to have the verdict received. Any error in communicating with the jury without the prior knowledge of the parties, and any opportunity to challenge the effect of the note, was expressly waived in open court.

Now that the verdict turned out to be unfavorable it is too late to complain.

The above discussion relates to the grounds for reversal particularly urged by appointed counsel for the appellant.

We have carefully considered the numerous grounds for reversal urged by appellant in his pro se brief. They are clearly without merit, necessitating no further discussion.

AFFIRMED.